CHARLES STORY *vs.* JUDE KIMBALL.

CALEDONIA,
March,
1834.

Where *oyer* is asked for and given, the party asking may make use of it, although he may not have been entitled to it.

Where *oyer* of a judgment is given, and a plea is made thereon, whatever is given in *oyer* is to be considered as a record of the judgment.

Where a justice has deceased without making a formal record, minutes of a judgment rendered by him, made on the writ, if they shew a 'judgment rendered, and the amount, may be received as evidence of the judgment.

This was an action of debt on a judgment rendered by a justice of the peace, declared on with a *"pro ut patet per recordum."* The defendant prayed *oyer* of said record, which was read. The record read showed a regular writ and declaration, in the usual form, and made returnable, and the court to be holden on the 9th of February. The return of the officer thereon was as follows:

"CALEDONIA, *ss.* } Then served this writ by attaching as *January* 18, 1828. } the property of the within named defendant, one stick of wood, and on the same day left at defendant's last and usual place of abode a true and attested copy of this writ, with my doings thereon endorsed, in the hands of a person therein residing. HARVEY SHEPHERD, *Dep. Sher.*"

A description of the minutes on the back of the writ, made by the justice, (Blanchard,) is incorporated into the opinion of the court, to which however it should be added that the entry "Caledonia, *ss.* Peacham, 16th, 1828, judgment rendered by the court for plaintiff, at $5,25 debt—R. Blanchard, Justice of the Peace," was made on the receipt upon which the suit was predicated, lodged in the files.

*C. Davis for plaintiff.*—This case is debt upon judgment, recovered before R. Blanchard, justice peace, in 1828. The defendant prayed *oyer* of the record of said judgment, and then demurred. This mode of proceeding, we believe, is wholly irregular and unauthorised by law. *Oyer* is not demandable of a record under such circumstances, so as to entitle the defendant to place the proceedings on record and then demur.—1 Ch. R. 427, 370.—1 T. R. 150, *Rex vs. Amers.*—2 Doug. 476, *Jeffry vs. White.*—1 Saund. 9, 92, n. 3.—5 Dane, p. 428, § 34, 35.

The only proper mode would have been for the defendant to have pleaded that there was no such record ; and to do this, no demand of *oyer* would be necessary. The question would

CALEDONIA, *March,* 1834.

Story *vs.* Kimball.

then have been upon the validity of the record, and an opportunity would have been presented to have procured a correction, or set up any fact that might be proper. If, then, plaintiff has lost some advantage in the present case, as it is presumed he has, the court below having rendered judgment for defendant upon the ground of insufficiency of the record, and we are correct in the above position, the court will grant a new trial.

But sufficient appears in the records, as incorporated in defendant's pleas, to entitle the plaintiff to recover. An appearance by defendant—a trial upon the merits, and a judgment for the plaintiff for definite sums in damages and costs, are all sufficiently manifest from the whole proceedings, although not stated in form. The court was set February 9, 1828, at 10 o'clock, A. M., and continued to the 16th inst. There follows a regular taxation of costs, in which the plaintiff is allowed 50 cents, and the court fee 67 cents—neither of which would have been correct, had there been no appearance and judgment had passed by default. Presumption is in favor of the accuracy of this taxation in the absence of proof to the contrary. Then on the back of the receipt declared upon and lodged in the files, are the words "Caledonia, Peacham 16th, 1828, judgment rendered by the court for plaintiff $5,25 debt—R. Blanchard, Justice Peace," and subsequently a regular entry upon the files that execution issued August 9th, 1828.

If this entry on the receipt had been made on the writ, I suppose it would have been regarded as satisfactory ; but I am unable to perceive any well-grounded distinction. This being on the very voucher necessary to be produced and lodged in the files, and so lodged in fact, is certainly a strange case. The circumstance that *Peacham* is named as the place of giving judgment, is of no consequence—the court having been set in Barnet. The trial may have been at Peacham by consent of parties, without any record of it : or the justice, who lived in Peacham, may have heard the parties in Barnet, and some time afterwards, upon mature consideration, at his own residence made up his mind and made the entry.

*Wm. Mattocks, contra.*—The defendant first contends, that if the proceedings were otherwise good, there being no record of the defendant's appearance, the whole is void for want of legal service of the writ.

A man cannot be made defendant, unless the writ is served on him in some legal way.—*Society* vs. *A. & W. Bullard*, 4 Vt. R. 119, 122.

Again : If these proceedings, (unworthy to be called records,) shewing no notice, nor appearance, nor default, are to have any effect by analogy in principle to the case named in the statute, p. 138, they ought to be treated only as *prima facie* evidence of a debt. But the defendant denies that they prove any debt *prima facie* or *conclusively.*

The only pretence of a record of a judgment is on the back of Fuller's receipt for the execution—"Peacham 16th, 1828."

Take the whole papers together, there is no statement that a court was holden—that the parties were called, or either appeared.

There is no date to the entry on the receipt aforesaid.

It was at a place not named in the writ, nor any intimation given of a continuance to Peacham.

There is no mention of judgment for costs. The items of costs entered on the writ cannot aid the defects, as there is no evidence of this being the act of the justice, or in his hand-writing, or approved by him.

This memorandum is no evidence of a judgment between these parties—it being on the back of the receipt (signed by Fuller) and Fuller not named in the writ. It rather implies, if any thing, a judgment against Fuller. But all is vague and uncertain. The expression "Execution issued hereon, 9th August, 1828," affords no aid. "*Hereon*" means on the writ : It names no parties nor sums, and is no evidence of a judgment unless by remote inference.

Justices are bound to make a record, (See Statute, p. 304) and are paid therefor—(p. 298.)

As a judgment merges the original debt and creates a new one of the highest nature, it is important that it be explicit.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This is an action of debt on judgment declared on, with a *pro ut patet per recordum.* The defendant has craved *oyer* of the record and demurred. The declaration is defective ; but the defects are such as can only be reached by a special demurrer.—*Adams* vs. *Campbell*, 4 Vt. R. 447. The defendant was not entitled to *oyer*, as there was no *profert*. Where a profert is unnecessarily made, the defen-

CALEDONIA,
March,
1834.

Story
vs.
Kimball.

CALEDONIA,
March,
1834.

Story
vs.
Kimball.

dant is not on that account entitled to *oyer*, but must plead without; but if it is asked for, and given, he may make use of it. In this case *oyer* is asked for, and the record is set forth, and is to be considered as part of the declaration. The defendant has not plead *nul tiel record*, so that we have to examine the record itself, and see when and how it was made; but having accepted the record given on his prayer of *oyer*, it must now be considered the same as if such a record had been made by justice Blanchard, as set forth in the plea. This shows a writ, the service made thereon, (a service to be sure defective, but the defects cannot here be noticed,) that the writ was made returnable, and the court to be holden on the 9th February—a minute under date of the 9th February of a continuance to the 16th inst., which means February—an entry as follows:— "Peacham 16th, 1828, judgment rendered by the court for plaintiff at $5,25 debt," signed by the justice—cost is taxed in the margin at $6,40; but the entry against it is, "cost allowed at $5,25—execution issued hereon 9th August, 1828." This was also signed by the justice.

As this inquiry is not on a plea of *nul tiel record*, as has been observed, it must be considered here as though all these words, letters and figures which are set forth in the plea, were made by the justice, as, and for a record of his proceedings and judgment thereon. I think if the justice had wrote down in a book, kept by him for that purpose, all these proceedings in the same way and manner that they are here exhibited, it would have been a good, though an informal record of his proceedings and judgment; and the demand in controversy, declared on in that writ, would be considered as adjudicated upon, and settled by that judgment. Unless the record is sufficient to enable the plaintiff to maintain this action of debt on judgment, it would not protect the defendant as a bar in an action brought against him for the same cause of action there mentioned, even although an execution had issued thereon, and had been satisfied.

In judging of this record, it is to be remarked, that no form is given for making up records of proceedings before a justice of the peace, and that different forms are used by different justices. From necessity we must not too strictly or severely examine their forms of proceedings in making up their records. Many of their judgments, and too many of the judgments of the supreme and county courts in a former day, are left without any

CALEDONIA,
*March*,
1834.

Story
*vs.*
Kimball.

other evidence except the files and docket minutes. A justice court is not a continuing, permanent court. When the justice dies, there is no one to make out, complete, or sign his records. In the higher courts, another clerk may finish what is left unfinished by his predecessor, under the inspection or direction of the court. To be very strict on this subject, would do a great injury, and would not produce any corresponding benefit. Judgments have been rendered, and the executions collected, where there is no other evidence of the judgment than a record similar to this, and perhaps not as formal. If they are not to be treated as evidence of the judgment, many a demand and controversy which have passed into judgment, both before justices and in the higher courts, may be again sued for and prosecuted. We had a case before us very similar to this, two years ago, in this county, (the case of *Buckminster* vs. *Fuller*,) where a judgment was allowed to be proved by minutes, not as full as these. From the necessity of the case, we must receive these informal proceedings as evidence of judgments rendered by magistrates who have deceased without making more formal records, when we can learn from the minutes which they have made that a judgment has been rendered, and the amount and sum for which it was rendered. The objections which were taken in this case, to the service of the writ, are not considered as entitled to much consideration : the defects, such as they are, were cured by the judgment. In any event, they could not be noticed in this way; the service may have been defective, so that the writ would have abated. If the justice had no jurisdiction for want of notice or regular service, this should have been put in issue by a distinct plea. The service here was sufficient to give the court jurisdiction; and as the defendant, Mr. Kimball, then lived in the state, it was undoubtedly good, although stated imperfectly in the return.

The judgment of the county court must be reversed, and judgment rendered for the plaintiff.